IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 5, 2004

## STATE OF TENNESSEE v. KENNY LYNN EVANS

**Appeal from the Circuit Court for Dyer County**
**No. C02-86     Lee Moore, Judge**

**No. W2003-03083-CCA-R3-PC  - Filed January 21, 2005**

The petitioner, Kenny Lynn Evans, appeals the dismissal by the Dyer County Circuit Court of his petition for post-conviction relief.  On appeal, the petitioner argues that he was denied the effective assistance of counsel at trial.  After review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Thomas H. Strawn, Dyersburg, Tennessee, for the Appellant, Kenny Lynn Evans.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner stands convicted of one count of second degree murder and one count of aggravated burglary, and he is serving an effective sentence of 40 years.  Originally, the petitioner was charged with premeditated first degree murder, felony murder, attempted first degree murder, and aggravated robbery.  Pursuant to negotiations with the state, the petitioner entered guilty pleas on September 24, 2002, to the reduced charges and accepted Range II offender status for sentencing.

The facts underlying the petitioner's plea appear in the transcript of his plea submission, which is before us.  In February 2002, the petitioner and another man conspired to steal weapons from a licensed firearms dealer, James Finley, and to sell the weapons to a third person who, unbeknown to the thieves, was a confidential informant working with the Dyersburg Police Department.  On February 21, 2003, the petitioner, armed with an automatic revolver, and two accomplices met briefly with the buyer and then drove to Mr. Finley's residence and entered the

residence. Mr. Finley and Mickey Petty were home at the time. During the course of the attempted robbery, the petitioner fatally shot Mr. Finley; Mr. Petty fled the scene and was able to summon help.

The petitioner and his accomplices returned empty handed to the residence where the buyer/informant was waiting. The petitioner then robbed the buyer/informant at gunpoint and fled. He was quickly apprehended and arrested.

On September 9, 2003, the petitioner filed a *pro se* petition for post-conviction relief. Counsel was appointed, and an evidentiary hearing was conducted on December 5, 2003. As grounds for post-conviction relief, the petitioner maintained that trial counsel's representation was constitutionally ineffective. The petitioner testified that shortly after his arrest, he was questioned by investigators with the Dyer County Sheriff's Department. The petitioner claimed that the investigators "knocked [him] out of [his] chair and they beat [him] up pretty bad," and the men told him that he needed to make a statement. In connection with the beating, the petitioner said that the investigators shocked him with a stun gun, spat on him, hit him in the face, and kicked him in the chest.

According to the petitioner, he advised his appointed counsel of the abusive treatment and asked counsel to take photographs of his injuries. The petitioner testified that he asked two of the attorneys to bring a camera to document his injuries, but no photographs were ever taken.

The petitioner also claimed that his counsel ignored his request to seek a change of venue based on pretrial publicity. The petitioner said that one of the attorneys told him "that it just really wasn't no use of even doing it." The petitioner also wanted counsel to set a hearing to seek the suppression of evidence that the state intended to introduce, particularly the audio tapes of his confession to the investigators. The petitioner said that, at the time of trial, he was under the impression that the evidence had been suppressed, although he never attended a suppression hearing.

When a plea was finally discussed with counsel, the petitioner said that it was his understanding that he would enter a best-interests plea. The petitioner testified that the plea was in his best interests to avoid greater punishment, including possibly the death penalty. The petitioner said that, at the plea submission, he balked at agreeing that he was the person who shot Mr. Finley. The petitioner recalled an earlier meeting with prosecution counsel, during which the petitioner was told that he must answer the questions at the plea submission a certain way to "get the deal."

Last, the petitioner complained that it appeared to him "that the Public Defender's Office, you know, was probably intimidated by the, you know, the District, the District Attorney's Office," such that fighting his case "to the fullest" might somehow damage his attorneys' reputation or ruin their careers.

On cross-examination, the petitioner admitted that, completely independent from his confession to the investigators, the state had numerous witness statements and other evidence showing his involvement in the shooting and robbery. The state also pointed out that although the

petitioner claimed that his confession was coerced and that the investigators told him what to say, the petitioner told the investigators that what happened was an accident and blamed another person. The petitioner responded by claiming that he made the statement "out of fear."

To rebut the petitioner's testimony, the state presented testimony first from Investigator Terry McCreight, who was involved in questioning the petitioner. Investigator McCreight flatly denied ever abusing or coercing the petitioner and denied coaching the petitioner about what to say in his statement. Investigator McCreight related other evidence that the police had gathered showing the petitioner's guilt, including eyewitness testimony from Mr. Petty, statements from one of the co-defendants that the petitioner shot Mr. Finley, the murder weapon that was recovered from the petitioner's vehicle, and eyewitness testimony that the petitioner later robbed the buyer/informant.

The second witness for the state was attorney James Lanier, who was part of the defense team representing the petitioner. Mr. Lanier denied that the petitioner ever complained of police mistreatment. Regarding the petitioner's statements to law enforcement, Mr. Lanier explained that the petitioner took the position that the shooting was an accident. In other words, the statements that the petitioner wanted suppressed were "actually self-serving." Mr. Lanier said that he spoke at length with the petitioner about the poor prospects of having the jury accept that the shooting was accidental, particularly in light of other state evidence. Nevertheless, Mr. Lanier left to the petitioner the ultimate decision whether to plead or proceed to trial.

The petitioner, according to Mr. Lanier, was willing to plead guilty if the state would offer second degree murder. After considerable negotiations with the state, Mr. Lanier secured such an agreement from the state under the condition that the petitioner plead outside the range. Before the plea was entered, Mr. Lanier and prosecution counsel met privately with the petitioner. Mr. Lanier recalled that the "main gist" of the meeting was for the state to find out what the petitioner would say about his co-defendant who was still facing charges. Mr. Lanier flatly denied that anyone ever "put words" in the petitioner's mouth or told him what to say. Mr. Lanier did, however, explain to the petitioner what type of questions that the court would ask during the plea submission.

On cross-examination, Mr. Lanier testified that he never saw any signs that the petitioner had been injured. Mr. Lanier talked many times to Investigator McCreight about discovery, but nothing prompted Mr. Lanier to inquire whether the petitioner's statements had been coerced, particularly because in his statements the petitioner was more or less debating with the investigators and trying to convince them that the shooting was accidental.

Regarding a change of venue for trial, Mr. Lanier thought the issue might have been discussed, but counsel collectively decided insufficient grounds existed pretrial to challenge venue. The plan was to wait until trial and then re-evaluate the issue in light of jury selection. As for suppression issues, Mr. Lanier testified that based upon their investigation of the evidence and the evident chain of custody, no viable suppression issues were presented.

In concluding its proof, the state briefly recalled the petitioner and established that he was familiar with the questions posed during his plea submission inasmuch as he had pleaded guilty numerous times in the past.

Based on the testimony presented, the post-conviction court ruled that the petitioner had not carried his burden to show ineffective assistance of counsel. The court found that the petitioner's "allegations just simply are not credible." In particular, the court noted that there was no credible evidence that the petitioner had been coerced into making a confession. The court also found no basis existed to conclude that the petitioner's plea was involuntary; the court noted that because of the plea, the petitioner received a substantially shorter sentence than he otherwise faced at trial. Accordingly, the court dismissed the post-conviction petition. Aggrieved by this ruling, the petitioner has appealed.

Our review convinces us that the post-conviction court's rulings should be affirmed.

The law is settled that the post-conviction petitioner bears the burden of establishing, at the evidentiary hearing, his allegations by clear and convincing evidence. Tenn. Code. Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he must establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Also, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. *See id.* at 697, 104 S. Ct. at 2069.

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 655 n.38, 104 S. Ct. 2039, 2050 n.38 (1984)).

Measured by these standards, it is readily apparent that the petitioner failed to carry his burden, and the evidence in the record certainly does not preponderate against the post-conviction court's findings. The court specifically found that the petitioner's allegations were not worthy of belief, and the state offered testimony from eminently credible witnesses that directly and un-equivocally contradicted the petitioner's claims. On appeal, the petitioner offers nothing new to

persuade us to disturb the trial court's ruling. The trial court's credibility determinations are clearly reasonable and foreclose the need for any prolonged discussion of the issues.

Consequently, for the foregoing reasons, we affirm the denial of post-conviction relief and the dismissal of the petition.

_____
JAMES CURWOOD WITT, JR., JUDGE